IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:22-cv-00607-MR-WCM

| | |
|---|---|
| MELISSA A BINNS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 7, 9), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Procedural Background

In February of 2021, Plaintiff Melissa A. Binns ("Plaintiff") filed an application for supplemental security income alleging disability beginning on November 10, 2016. Transcript of the Administrative Record ("AR") 166-171.

On April 13, 2022, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 18-34. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "anxiety, depression, eating disorder, [and] obesity." AR 23. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: unskilled work in two hour segments; nonproduction pace (non-automated/non conveyor pacing); infrequent changes in work setting; public contact incidental to work being done; occasional contact with supervisors and coworkers; no teamwork/tandem work for task completion; no conflict resolution or crisis management; no driving or operation of heavy machinery; no more than occasional handling of money (counting/making change).

AR 25.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that exist in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 29-30.

## III. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ erred when deciding whether her impairments met or medically equaled certain listed impairments, did not consider certain opinion evidence properly, and failed to support his conclusions regarding Plaintiff's RFC.

2

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff

3

is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Listings 12.04 and 12.06

The Listings detail impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013). The burden of presenting evidence that an impairment meets or is medically equivalent to a listed impairment lies with the claimant. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986). An impairment meets a listing if it satisfies all the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Here, Plaintiff contends that the ALJ erred in rejecting certain evidence and that this information shows that Plaintiff meets Listing 12.04 (relating to depressive, bipolar and related disorders) and/or Listing 12.06 (relating to anxiety and obsessive-compulsive disorders). Both Listings require medical documentation of the designated disorder. See Listing 12.04A and Listing

4

12.06A. Additionally, for either Listing, a plaintiff must provide proof that he or she has at least one "extreme" limitation, or at least two "marked" limitations in the following areas of mental functioning (the "Paragraph B criteria"): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. Listing 12.04B; Listing 12.06B.

As an alternative to establishing the Paragraph B criteria, a plaintiff may establish, under "Paragraph C," that the mental disorder is "serious and persistent," meaning that the plaintiff has a "medically documented history of the existence of the disorder over a period of at least 2 years" and there is evidence that (1) ongoing "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s)" diminish the signs and symptoms of the plaintiff's mental disorder; and (2) the plaintiff has "minimal capacity to adapt to changes in his or her environment." Listing 12.04C; Listing 12.06C.

### 1. Paragraph B Criteria

With respect to the Paragraph B criteria, Plaintiff argues that she has marked limitations in the areas of concentrating, persisting, or maintaining pace and interacting with others based primarily on two "Psychiatric Review Techniques" completed by Plaintiff's treating providers, Holly M. Hauser, a licensed psychological associate, and Dr. Randie Schacter Fitzgerald, a

5

psychiatrist. Both Ms. Hauser and Dr. Schacter Fitzgerald indicated that Plaintiff had "marked" limitations in her ability to interact with others and her ability to concentrate, persist, and maintain pace. See AR 342-356, 269-283.

In contrast to these opinions, the ALJ determined that Plaintiff had moderate limitations in both her ability to concentrate, persist, or maintain pace and in her ability to interact with others. AR 24-25. In making this determination, the ALJ cited Dr. Schacter Fitzgerald's treatment notes reflecting that Plaintiff's mental status was normal at appointments. AR 24-25 (citing AR 293-327 (Psychiatric Progress Notes from January 27, 2016 through June 23, 2021 generally showing that Plaintiff was oriented to person, place, time, and situation; was awake and alert; exhibited full affect but, at times, a depressed or anxious mood; had logical and goal directed thoughts; and that her memory and attention was within normal limits or noted as "fair"); AR 338, 341 (September 14, 2021 and December 7, 2021 Psychiatric Progress Notes reflecting same); AR 359 (February 3, 2022 Psychiatric Progress Note reflecting same); AR 362 (August 15, 2022 Psychiatric Progress Note reflecting same)).[1]

---

[1] Additionally, the ALJ noted that Plaintiff lived in a dorm room while attending college, that she graduated in 2015 after four years with a GPA of 3.3, and that she currently lived with her mother and grandmother. AR 24-25. Plaintiff argues that the ALJ erred in relying on Plaintiff's ability to attend and graduate from college because Plaintiff graduated prior to her alleged disability onset date. The ALJ, however, did

Plaintiff argues that these treatment notes support Dr. Schacter Fitzgerald's opinion regarding Plaintiff's marked limitations. Doc. 7-1 at 9. In that regard, Plaintiff points to treatment notes in which Plaintiff indicated that she "couldn't get out of bed," was sleeping and eating excessively, and was experiencing stomach aches, constipation, diarrhea, frequent vomiting, feelings of hopelessness and low energy, and panic attacks. See Doc. 7-1 at 9-11.

While the notes cited by Plaintiff include this information, they also indicate, as stated by the ALJ, that Plaintiff's mental status examinations were generally within normal limits. Further, the notes reflect that Plaintiff reported she was, at least at times, exercising, writing, and applying for jobs, was "doing alright," was "believe[ing] more in [herself]," was doing "good," was anxious "but managing," was "doing well [and] living life," and liked working as a substitute teacher, See AR 314, 303, 302, 301, 299, 296, 338, 341. Also, Plaintiff asserts that some of these notes indicate she had suicidal ideation. However, those notes appear to be somewhat equivocal in that regard, and other notes indicate a lack of suicidal ideation. See AR 318, 311, see also AR 310 (denying suicidal ideation).

Additionally, Plaintiff argues that the opinion of Ms. Hauser supported

---

not rely solely on Plaintiff's previous graduation; rather, the ALJ also cited Plaintiff's treatment records when determining the severity of her mental limitations.

a finding that Plaintiff met the Paragraph B criteria. Doc. 7-1 at 11-12. In that regard, Ms. Hauser submitted two letters, dated March 18, 2021 and November 11, 2022, in which she opined that Plaintiff had difficulty maintaining a schedule, attending social events and activities, and generally completing activities of daily living; experienced marked fears about driving; and had marked limitations in her ability to interact with others and her ability to concentrate, persist, and maintain pace. AR 291, 336. Ms. Hauser also completed a "Psychiatric Review Technique" which likewise reflected "marked" degrees of limitation in these two areas. AR 358.

As an initial matter, it does not appear that the administrative record includes any treatment notes from Ms. Hauser. Rather, only the two letters and Ms. Hauser's Psychiatric Review Technique are included.

Additionally, although the ALJ did not specifically discuss Ms. Hauser's opinions when considering the Paragraph B criteria, the ALJ did acknowledge these opinions later in his decision and explained that he found the marked limitations indicated by Ms. Hauser were "not supported by the objective medical evidence" and were instead apparently "based on the claimant's subjective symptoms." AR 28. In making this finding, the ALJ again cited to

Dr. Schacter Fitzgerald's treatment notes, discussed above.[2]

Accordingly, the undersigned is persuaded that the ALJ supported his findings with respect to the Paragraph B criteria appropriately.

### 2. Paragraph C Criteria

With respect to the Paragraph C criteria, the ALJ stated that Plaintiff had "no residual disease process such that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation: and the claimant is functioning in a normal living arrangement and does not require a highly supportive living arrangement." AR 25.[3]

Plaintiff argues that she "*is* living in a highly structured setting with both her mother and grandmother supporting her" and has been engaged in ongoing mental health therapy and medical management such that the ALJ's conclusion that she does not meet the Paragraph C criteria was simply wrong. Doc. 7-1 at 14 (emphasis in briefing).

In considering the severity of Plaintiff's mental limitations, though, the

---

[2] Plaintiff also argues that the ALJ failed to consider appropriately a Third-Party Function report completed by Plaintiff's mother. The ALJ did, however, acknowledge that Third-Party Function report.

[3] The regulations further explain that the Paragraph C criteria are satisfied when the claimant relies upon medical treatment, mental health therapy, psychosocial supports, or highly structured settings on an ongoing basis to diminish the symptoms and signs of the disorder and that, despite such diminishment, the claimant has achieved only marginal adjustment. Listing 12.00G(2)(a)-(c).

ALJ did recognize Plaintiff's living situation and her ongoing mental health treatment. See Nations v. Colvin, No. 1:14–cv–00190–MOC, 2015 WL 1893655, at *7 (W.D.N.C. April 27, 2015) ("The record simply shows that Plaintiff lived with his fiancé and, previously, with his mother. Though Plaintiff undoubtedly receives assistance and comfort from such cohabitation, Plaintiff has simply failed to show that he would be unable to function if he did not live with either of them.").

The undersigned will not recommend remand on this basis.

### B. Consideration of Opinion Evidence

For applications filed on or after March 27, 2017, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. § 404.1520c(a)); 20 C.F.R. § 416.920c(a).[4] Specifically, an ALJ is now required to consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous

---

[4] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments meet or medically equal a listing, and a claimant's residual functional capacity. Id.

factors that are considered, as appropriate, with "supportability" and "consistency" being the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Bright v. Saul, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).

In developing Plaintiff's RFC, the ALJ found the opinions of state agency psychological consultants, David Mullen, Psy.D. and Jacquelyn A. Harrison, Ph.D., to be persuasive. These consultants both concluded that Plaintiff had a mild limitation in her ability to understand, remember, and apply information, and moderate limitations in her ability to interact with others; to maintain concentration, persistence, and pace; and to adapt and manage herself. They also determined that Plaintiff had the ability to maintain concentration, persistence, and pace in two-hour segments "for simple, routine, repetitive tasks with occasional social contacts in a stable, undemanding work setting." See AR 27-28 (citing AR 59-61; 65-67).

In contrast, and as discussed above, Plaintiff's treating providers, Ms. Hauser and Dr. Schacter Fitzgerald, found that Plaintiff had greater limitations.

The ALJ explained that many of Dr. Schacter Fitzgerald's treatment notes began by Plaintiff "indicating that she is doing okay" and that the objective findings set out in those notes "contradict[ed] the level of dysfunction indicated in the opinion {most of the time indicating full affect and thoughts 'logical and directed' and memory and attn 'WNL'}." AR 28 (punctuation in original).

Similarly, with respect to Ms. Hauser's opinions, the ALJ explained that he found Mr. Hauser's opinions unpersuasive because the "notes of [Plaintiff's] treating practitioners usually showed that the claimant's mental status was normal at appointments." Id. (again citing Dr. Schacter Fitzgerald's treatment notes).[5]

Finally, although Plaintiff takes issue with the ALJ's reliance on the opinions of Dr. Mullen and Dr. Harrison, the ALJ explained that he found these agency consultants' opinions to be persuasive because they were consistent with Plaintiff's mental status examinations. AR 28. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (while "[a] 'non-examining physician's opinion cannot, by itself, serve

---

[5] Plaintiff argues that remand is warranted because the ALJ did not discuss the other factors set forth in 20 C.F.R. § 404.1520c(a)). Doc. 7-1 at 20. However, the ALJ was required to discuss these additional factors. See 404.1520c(b)(2).

as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) (emphasis in Smith)).

Accordingly, the undersigned will not recommend remand on this basis.

### C. Plaintiff's RFC

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

In formulating an RFC, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is required, however, to build "an accurate and logical bridge from the evidence to his conclusion" that the RFC sufficiently accounts for the claimant's limitations. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence."); Darby v. Berryhill, No. 1:16cv366-RJC, 2018 WL 310136, at * (W.D.N.C. Jan. 5, 2018) ("if the ALJ shows her work, then the Court will most likely find substantial evidence supporting her ultimate conclusion.").

13

Here, when developing Plaintiff's RFC, the ALJ first discussed Plaintiff's hearing testimony regarding her ongoing depression and anxiety with mood swings and fatigue, her trouble getting out of bed and her fear of driving, and that she "was unable to maintain employment due to fatigue and difficulty concentrating." AR 26. The ALJ explained, though, that "[w]hen a claimant alleges significant mental symptoms, such as poor memory, concentration, and social functioning, [the ALJ] would expect that her treating practitioners would note abnormalities on mental status examinations." AR 26. As discussed above, the ALJ found that Plaintiff's treatment notes did not include such abnormalities.

Additionally, the ALJ noted that Plaintiff had graduated from college with a 3.3 GPA after four years and "approximately one year prior" to Plaintiff's alleged disability onset date, and that Plaintiff's treatment records reflected Plaintiff was exercising. AR 27 (citing AR 333 (November 1, 2021 treatment note indicating that Plaintiff had lost "20 lbs in the past year. She has been doing youtube workouts. She is reframing her relationship with food. She is eating healthier.")).

Finally, as discussed above, the ALJ relied on Plaintiff's treatment notes and explained why, based on those treatment notes, he found the opinions of Dr. Mullen and Dr. Harrison to be persuasive, and the opinions of Ms. Hauser and Dr. Schacter Fitzgerald not to be persuasive. AR 27-28.

14

Plaintiff argues that the ALJ's analysis of her RFC is inconsistent with the opinions of Ms. Hauser and Dr. Schacter Fitzgerald as well as with statements by her and her mother regarding Plaintiff's abilities. As discussed above, however, the undersigned is persuaded that the ALJ's conclusions were supported by substantial evidence. See Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (unpubl.) ("the substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'") (quoting Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)); Corona v. Kijakazi, 5:22-cv-131-MOC, 2023 WL 3105119, at *5 (W.D.N.C. April 26, 2023) ("the existence of even a preponderance of contrary medical and psychological evidence is insufficient to defeat the ALJ's RFC, which in this case is supported by much more than a scintilla of evidence…").

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 7) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 9) be **GRANTED**.

Signed: December 18, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).